IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 16-30021-001 |
| ) | |
| **JAMILL GRANT,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Jamill Grant's Amended Motion for Compassionate Release (d/e 38) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is GRANTED.

**I. BACKGROUND**

On August 22, 2016, Defendant pled guilty to each count of a three-count Indictment. Minute Entry, Aug. 22, 2016. All three counts charged Defendant with distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Indictment, d/e 4. On January 20, 2017, Defendant was sentenced to 120 months' imprisonment on each count to run concurrently and 6 years of supervised release

on each count to run concurrently. See Minute Entry Jan. 20, 2017; Judgment, d/e 26. Defendant is currently incarcerated at FCI Milan, and his projected release date is October 6, 2024. See Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed July 17, 2020). As of July 17, 2020, FCI Milan has six active confirmed inmate cases of COVID-19 and one active confirmed staff member case. See COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed July 17, 2020).

On July 6, 2020, Defendant filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). See d/e 36. On July 12, 2020, following the appointment of the Federal Public Defender's Office to represent Defendant, an Amended Motion for Compassionate Release was filed. See d/e 38. Defendant seeks compassionate release due to his health issues and the COVID-19 pandemic.

Defendant is a 49-year-old male who has been diagnosed with Type II diabetes, hypertension, and osteomyelitis and is considered obese as he is 6'2" and 274 lbs. On July 15, 2020, the Government filed a response stating that it does not object to Defendant's motion

provided that an appropriate release plan is in place. See d/e 42. On July 17, 2020, the Court held a video hearing on Defendant's Amended Motion for Compassionate Release at which the Court questioned Defendant and Defendant's cousin, Mario Register, who Defendant intends to live with if he is released.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP

denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate made his or her request, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

### A.   Exhaustion

The Court concludes that § 3582(c)(1)(A) does not require the Court to wait to consider a compassionate release request if there is a credible claim of serious and imminent harm from this pandemic. That does not mean the Court will waive the exhaustion

requirements in all cases. The decision must be made on a case-by-case basis.

In this case, it is unclear if Defendant has submitted a request for compassionate release to the warden of his facility. See Am. Mot. Compassionate Release 2. In its response, the Government does not seek to enforce the 30-day requirement. See Resp. 2. The Court therefore finds that exhaustion of administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A) is not an issue in this case.

**B.    Compassionate Release**

The Court begins with the factors set out in 18 U.S.C. § 3553(a). Defendant is currently serving a 120-month term of imprisonment for three counts of distribution of heroin. While incarcerated, Defendant has only been disciplined once for being insolent to a staff member. See Probation's Mem. 1, d/e 43. He has taken several educational courses and has been working towards his GED. See Am. Mot. Compassionate Release 7. Defendant has shown he has spent his time while incarcerated trying to better himself.

The U.S. Probation Office has reviewed Defendant's release plan and suggested living arrangement but was not able to contact

Mr. Register—the individual Defendant proposed to live with if released.  See Probation's Mem. 2.  At a hearing held on Defendant's amended motion, however, contact was made with Mr. Register and Mr. Register reported that he would make himself available for the Probation Office to conduct a virtual inspection of the proposed residence.

The Court has reconsidered the factors in § 3553(a) and concludes that they entitle Defendant to compassionate release.

The Court must also consider whether "extraordinary and compelling reasons warrant such a reduction" and is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons.  Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation.  Social distancing can be difficult for individuals living or working in a prison.

Defendant is a 49-year-old African American male with hypertension, diabetes, and obesity.  Obesity and diabetes are both conditions that increase Defendant's risk of serious illness or death if Defendant contracts COVID-19.  See People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed July 17, 2020).  Hypertension is a condition that may increase Defendant's risk of serious illness or death if Defendant contracts COVID-19.  Id.  While the CDC does not specifically list osteomyelitis as a risk factor, the CDC states that people with compromised immune systems are at increased risk from COVID-19.  Id.  Defendant's osteomyelitis—which in simple terms is an infection in the bone of his leg—requires regular treatment with intravenous antibiotics in order to ensure that the infection does not spread to Defendant's bloodstream, which could be fatal.  Am. Mot. Compassionate Release 4.  Because of that condition, Defendant had been scheduled for transfer to a hospital outside of the institution for surgery to amputate the infected leg.

That surgery, however, has been indefinitely postponed due to the ongoing COVID-19 pandemic.

As of July 17, 2020, FCI Milan has six active confirmed inmate case and one active confirmed staff member case of COVID-19. See COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed July 17, 2020). The facility has had three inmates die from COVID-19. Id. The facility has already had another ninety-two inmates and fifty-five staff members who contracted COVID-19 but recovered. Id.

The Court also considers whether Defendant is a danger to the safety of any other person or to the community. See U.S.S.G. § 1B1.13.[1] If Defendant quarantines himself at his new place of residence away from any other household members, that will diminish the risk of spreading the virus. Otherwise, the Court does not find that Defendant poses a danger to the community.

The Court, taking all the relevant facts into account, finds that Defendant has established that there exist extraordinary and

---

[1] Section 1B1.13 of the Sentencing Guidelines has not been amended to reflect the First Step Act's amendment to 18 U.S.C. § 3582(c)(1)(A). As it stands, § 1B1.13 refers to a reduction "upon the motion of the Director of the Bureau of Prisoners." No policy statement provides guidance for when a defendant files a motion. Nevertheless, the Court considers § 1B1.13.

compelling reasons that warrant a reduction in his term of imprisonment, and the Court finds that compassionate release is appropriate in this case.

### III. CONCLUSION

For the reasons set forth above, Defendant Jamill Grant's Amended Motion for Compassionate Release (d/e 38) is GRANTED. The Court hereby reduces Defendant's term of imprisonment from 120 months on each of Counts 1, 2, and 3 to time served. Defendant's pro se Motion for Compassionate Release (d/e 36) is DENIED AS MOOT.

The Court modifies Defendant's conditions of supervised release to require Defendant to spend two months on home confinement, which includes a strict 14-day isolation quarantine, with the home confinement starting as soon as possible after his term of supervised release begins.  Defendant shall be monitored by telephonic monitoring as approved by the United States Probation Office until such time as the U.S. Probation office is able to implement electronic monitoring.  All other aspects of Defendant's sentence shall remain the same.

On July 16, 2020, the Court directed the Bureau of Prisons to administer a COVID-19 test on Defendant. The Court was informed that Defendant has tested negative. The Bureau of Prisons is therefore ORDERED to release Defendant IMMEDIATELY. The Clerk is DIRECTED to send a copy of this Opinion to the Bureau of Prisons. Defendant must self-quarantine for a period of 14 days beginning at the time of his release, including while he travels from the FCI Milan to his new place of residence. Defendant shall travel to his new place of residence in a vehicle that allows him to follow the CDC's social distancing guidelines, which include staying at least six feet from others and everyone wearing a face mask and gloves.

ENTER:  July 17, 2020.

*s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE